UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 99-43 (PLF) |
| | ) | Civil Action No. 02-2531 (PLF) |
| PEDRO AGRAMONTE, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This case is before the Court on defendant Pedro Agramonte's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Agramonte's motion and memoranda allege three errors which he contends require that his conviction be vacated and the case be scheduled for a new trial. See Memorandum in Support of Petitioner's § 2255 Motion at 4-19. Specifically, Agramonte claims that (1) the Court erred by admitting evidence of other crimes, (2) the Court improperly instructed the jury to consider that evidence, and (3) Agramante received ineffective assistance from his trial counsel, Howard F. Bramson, and his counsel on appeal, David B. Smith. Id.

Upon consideration of the papers filed by Mr. Agramonte and by the government, the transcripts of the trial and the Court's clear recollection of the trial, and the transcripts of other hearings in the case, the Court concludes that defendant Agramonte's motion should be denied.

I.  BACKGROUND

On June 1, 1999, Mr. Agramonte and several co-defendants were charged in an indictment alleging their participation in a narcotics distribution conspiracy in Washington, D.C.  At trial, the government gave notice of its intention to introduce evidence of drug paraphernalia seized from Agramonte's apartment in Philadelphia as well as evidence of a secret compartment in a car linked to Agramonte that contained drugs, money, and handguns.  The government contended that this evidence of other alleged crimes was permissible under Rule 404(b) of the Federal Rules of Evidence to demonstrate Agramonte's knowledge, intent, and *modus operandi* in dealing with drugs.  After several hearings and over the vigorous objection of defendant's counsel, the Court ruled that the government could introduce the money and drugs found in the car and call the officers to testify about what they found in the Philadelphia apartment; evidence of the gun in the car was excluded.  At the conclusion of the trial, the Court gave extensive limiting instructions to the jury, directing it to use the aforementioned evidence only to help decide whether Agramonte had knowledge of drug trafficking practices and/or the intent to distribute heroin and cocaine.

On May 3, 2000, Mr. Agramonte was found guilty of numerous drug charges, including conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine.  On May 10, defendant's trial counsel, Howard Bramson, filed a motion for a new trial, alleging that the Court erred in admitting Rule 404(b) evidence against his client at trial.  The Court denied that motion on July 12, 2000.  On September 8, 2001, Mr. Agramonte was sentenced to 286 months in prison pursuant to the United States Sentencing Guidelines, followed by five years of supervised release.  In

determining the Sentencing Guideline range, the Court found by a preponderance of the evidence that Agramonte was accountable for 20 kiligrams of cocaine and five kilograms of heroin. Through counsel, Mr. Agramonte filed a notice of his appeal on September 14, 2000, and Mr. Bramson and counsel for co-defendant Jose Diplan filed a joint appellate brief on behalf of Agramonte and Diplan on February 12, 2001. Mr. Bramson's appellate brief argued, in part, that the Court had abused its discretion when it admitted evidence of alleged criminal activity occurring in Philadelphia.

On March 20, 2002, Mr. Bramson withdrew from serving as Agramonte's appellate counsel because of illness, and attorney David Smith was appointed to replace him.[1] With the approval of the United States Court of Appeals for the District of Columbia Circuit, Mr. Smith withdrew the brief prepared by Mr. Bramson and filed another brief on Agramonte's behalf. This new brief raised no challenges to Agramonte's conviction but rather attacked only the sentence imposed after conviction, alleging that the sentencing procedures violated Apprendi v. New Jersey, 530 U.S. 466 (2000). The appeals court agreed with counsel's Apprendi argument on two counts but not on the third; because the sentences imposed by this Court ran concurrently, however, the sentence imposed remained the same, and the court affirmed the sentence on December 28, 2001. See United States v. Agramonte, 276 F.3d 594 (D.C. Cir. 2001).

II. DISCUSSION

The Court has the authority to deny summarily a Section 2255 motion without holding an evidentiary hearing when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. A

---

[1] Sadly, Mr. Bramson subsequently passed away.

hearing must be held only when the Section 2255 motion raises "detailed and specific" factual allegations whose resolution requires consideration of information outside of the record or the judge's "personal knowledge or recollection." United States v. Pollard, 959 F.2d 1011, 1030-31 (D.C. Cir. 1992) (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)).  The judge's own recollection of the events at issue may enable him summarily to deny a Section 2255 motion.  See United States v. Pollard, 959 F.2d at 1031.  The decision whether to grant a hearing is committed to the discretion of the trial court, particularly when, as here, the judge denying the motion also presided over the trial in which the defendant claims to have been prejudiced.  See United States v. Morrison, 98 F.3d 619, 625 (D.C. Cir. 1996).

The Court concludes that the briefs of the parties and the entire record of this case conclusively show that the defendant is not entitled to relief and that an evidentiary hearing is not warranted.  There are no material facts in dispute, and the defendant has failed to present a creditable basis on which either relief should be granted or a hearing need be held.

*A.  Admission of Rule 404(b) Evidence and Limiting Instructions*

Petitioner's claim of error with respect to the admission of evidence under Rule 404(b) of the Federal Rules of Evidence must be denied outright, as it is not properly before the Court.  The defendant did not challenge any aspect of his conviction — including the Court's evidentiary decisions — on direct appeal.[2]  Thus, the procedural posture of the case precludes him from seeking collateral review on such

---

[2] As discussed above and noted by the court of appeals in United States v. Agramonte, 276 F.3d at 596, "Agramonte withdrew his brief challenging his conviction and now only contests the sentence he received."

nonconstitutional grounds. "The writ of habeas corpus and its federal counterpart, 28 U.S.C. § 2255, 'will not be allowed to do service for an appeal.' For this reason, nonconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." Stone v. Powell, 428 U.S. 465, 477 n.10 (1976) (citation omitted). Any substantive claims related to the admission of Rule 404(b) evidence and the related limiting instructions, therefore, are not properly before the Court and will not be addressed.[3]

### B. Ineffective Assistance of Counsel: Appellate Counsel

Defendant's claim that his appellate counsel provided ineffective assistance by not challenging defendant's conviction or raising the Rule 404(b) objection on direct appeal cannot be sustained.[4] The analysis by which courts determine whether appellate counsel provided ineffective assistance is the same as that for trial counsel. See Smith v. Robbins, 528 U.S. 259, 289 (2000). In order to prevail on an ineffective assistance of appellate counsel claim, a defendant must show two things. First, he must

---

[3] Petitioner also alleges that the instructions given to the jury violated his rights under the Due Process Clause of the Fifth Amendment, as they permitted the jury to consider criminal conduct in an unrelated case. To the extent that petitioner attempts to frame his Rule 404(b) claim as a due process violation, the Court is not persuaded. Objections to the admission of evidence in the current context fall squarely within the scope of the Federal Rules of Evidence and implicate no issues of constitutional law.

[4] Within his ineffective assistance claim, defendant criticizes both appellate and trial counsel. While his arguments with respect to appellate counsel are cognizable, defendant's objections to trial counsel's performance are less clear. Trial counsel was unsuccessful in his attempt to bar evidence of other crimes pursuant to Rule 404(b), but defendant offers no suggestion of how counsel's efforts fall below an objective standard of reasonableness in this regard. It would be difficult to support this contention, as trial counsel actively argued his client's position in multiple hearings on this question and provided a vigorous defense at trial. Given this record and defendant's failure to rebut the presumption that counsel provided effective assistance, the Court rejects defendant's assertion of ineffective assistance of counsel at trial.

show that counsel's performance was deficient, falling below an objective standard of reasonableness. See Strickland v Washington, 466 U.S. 668, 687-88 (1984). Counsel must have "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In evaluating counsel's performance, the Court begins with a rebuttable presumption that counsel provided effective assistance because there is a wide range of sound strategy that a constitutionally effective attorney might choose. See id. at 689-90. It is up to the defendant to overcome this presumption and show that the challenged action was not the result of sound strategy. See id. So long as a strategy or tactic employed by counsel was reasonable, that tactic is not a ground for attack even if it proved unsuccessful. See id. at 699. Second, the defendant must show that counsel's deficient performance in fact prejudiced his defense. See id. at 687. The Court need not address the second prong here, as defendant has failed to meet his initial burden in this case.

It is settled that a criminal defendant has no constitutional right to have appellate counsel raise every nonfrivolous issue that the defendant requests. Jones v. Barnes, 463 U.S. 745, 754 n.7 (1983). Whether such decisions by counsel amount to ineffective assistance depends on the reasonableness of the choices made as to the claims pursued and not pursued, but it is difficult in these circumstances to demonstrate that appellate counsel was incompetent. See Smith v. Robbins, 528 U.S. at 288. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (quoting Gray v. Greer, 800 F.2d 644, 656 (7th Cir. 1986)).

Appellate counsel in this case made a reasonable tactical decision to withdraw from consideration certain issues raised by defendant's previous counsel and focus instead on alleged sentencing violations under Apprendi. Such a winnowing of issues is essential to the appellate process. See Jones v. Barnes, 463 U.S. at 751-52 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). As Chief Justice Burger noted, an appellate brief that "raised every colorable issue runs the risk of burying good arguments." Id. at 753. This reasoning appears to have driven appellate counsel's decision:

> After reviewing the entire trial record, including the first appellate brief, I found the issues raised in the first appellate brief to be frivolous and not worth raising. I concluded that Mr. Agramonte's *best argument* on appeal concerned the issue that I did raise: whether the rule of Apprendi applied to his sentence. . . .
>
> Because I did not believe these [Rule 404(b)] "other crimes" issues came even close to being unfair or incorrect as a matter of law, I did not choose to challenge them on appeal.

Affidavit of David Smith, Ex. 8 to Government's Opposition Memorandum (emphasis added). Given the limitations of the appellate process and the extremely high degree of deference afforded to trial courts on issues relating to the admissibility of evidence, the calculation of appellate counsel cannot be deemed unreasonable.

*C. Retroactive Applicability of* Booker

The issue raised by Agramonte on direct appeal, and decided by the court of appeals, related to the validity of the sentencing procedures used by this Court in view of Apprendi v. New Jersey, 530 U.S. 466. The Supreme Court's recent decision in

United States v. Booker, __ U.S. __, 125 S. Ct. 738 (2005), raises an important issue with potential application to the sentencing in this case, as Mr. Agramonte's sentence was determined, at least in part, on the basis of facts found by the Court rather than by the jury under the Federal Sentencing Guidelines.  In Booker, the Court stated that its holding that the Sixth Amendment required a jury finding on sentencing factors under a mandatory guideline system applied "to all cases on direct review"; it included no explicit language about the retroactive application of its decision to cases on collateral review where the sentencing occurred under the old mandatory sentencing regime.[5]  Although the parties to this motion did not have the opportunity to brief the issue, the Court believes it would be beneficial to consider whether, if Mr. Agramonte were to have made a claim under Booker in his Section 2255 motion, the Court would be able to grant relief.

The Supreme Court has held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Teague v. Lane, 489 U.S. 288, 310 (1989).  A case announces a new rule "if the result was not dictated by precedent existing at the time the defendant's conviction became final." Id. at 301.[6]  Prior to Booker, the courts of appeals all agreed

---

[5] The Second Circuit has noted that the Supreme Court did not expressly make the Booker decision retroactive, thus failing to make Booker an appropriate basis for a motion pursuant to Section 2255.  See Green v. United States, 397 F.3d 101, 103 (2d Cir. 2005) (holding that, because the Supreme Court "made no explicit statement of retroactivity to collateral cases," neither Booker nor Blakely v. Washington, __ U.S. __, 124 S.Ct. 2531 (2004), applies retroactively on a collateral challenge); cf. Carmona v. United States, 390 F.3d 200, 202-03 (2d Cir. 2004) (analogous holding in context of Blakely); Cuevas v. Derosa, 386 F.3d 367, 368 (1st Cir. 2004) (same).

[6] A conviction is considered "final" when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." Griffith v. Kentucky, 479

that sentencing enhancements found by a court rather than by a jury, such as those challenged here, did not run afoul of Apprendi. See, e.g., United States v. Samuel, 296 F.3d 1169, 1172 (D.C. Cir. 2002). Although the decision in Booker derived from principles announced in Apprendi and Blakely, see United States v. Booker 125 S.Ct. at 752, the Supreme Court had expressly declined to consider the Federal Sentencing Guidelines in its previous decisions. See Apprendi v. New Jersey, 530 U.S. at 497 n.21; Blakely v. Washington, 124 S. Ct. at 2538 n.9. The Court therefore concludes that Booker is a "new rule" that was not dictated by existing precedent.

If a case announces a new rule, then that rule may be applied retroactively only if it "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or if it constitutes a "watershed rule[] of criminal procedure" implicating fundamental fairness and accuracy of the criminal proceeding. Teague v. Lane, 489 U.S. at 311; see also United States v. Lafayette, 337 F.3d 1043, 1046-47 (D.C. Cir. 2003). The first exception is not applicable to this case. As the Seventh Circuit has noted, "[n]o conduct that was forbidden before Booker is permitted today." McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005).

With respect to the second exception, the Supreme Court, in declining to apply Ring v. Arizona, 536 U.S. 584 (2002), retroactively, noted that the question is whether "judicial factfinding so seriously diminishe[s] accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." Schriro v. Summerlin, ___ U.S. ___, 124 S.Ct. 2519, 2525 (2004) (quotations omitted) (citing Teague v. Lane, 489 U.S. at 312-313). The Supreme Court found that Ring was not a

---

U.S. 314, 321 n.6 (1987).

9

"watershed rule" because "[w]hen so many presumably reasonable minds continue to disagree over whether juries are better factfinders at all, we cannot confidently say that judicial factfinding seriously diminishes accuracy." Id. (emphasis in original); see also id. at 2523 ("[r]ules that allocate decisionmaking authority in this fashion are prototypical procedural rules. . . ."); United States v. Latney, 131 F. Supp. 2d 31, 34 (D.D.C. 2001) ("shifting of an element of the offense from the judge to the jury and requiring proof of such element beyond a reasonable doubt rather than by a preponderance of the evidence does not directly relate to the accuracy of the conviction or sentence, nor does it implicate fundamental fairness").

The District of Columbia Circuit has not yet addressed the question of whether Booker should be applied retroactively, but other courts of appeals have found Booker not to apply when convictions are attacked collaterally.  See Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005) (holding that "Booker's constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review"); McReynolds v. United States, 397 F.3d at 481 ("Booker does not in the end move any decision from judge to jury, or change the burden of persuasion . . . . [T]he only change would be the degree of flexibility judges would enjoy in applying the [sentencing] guideline system"; therefore, the procedures required by Booker do not amount to "a 'watershed' change that fundamentally improves the accuracy of the criminal process."); Green v. United States, 397 F.3d at 103 (Second Circuit ruling that neither Booker nor Blakely applies retroactively, as neither case made an explicit statement of retroactivity to collateral cases).

At least three judges of this Court also have concluded that the Supreme Court's decision in Booker is not retroactive. See United States v. Hammond, No. 01-01422, Memorandum Opinion (D.D.C. Apr. 26, 2005) (Kennedy, J.); United States v. Hall, No. 04-1636, Memorandum Opinion (D.D.C. Apr. 19, 2005) (Huvelle, J.); United States v. Mathis, No. 97-334-04, 2005 U.S. Dist. LEXIS 5136 (D.D.C. Mar. 24, 2005) (Kollar-Kotelly, J.). As Judge Huvelle put it in Hall, "Booker clearly represents a new rule. But . . . it does not establish a substantive rule; rather, it is procedural. Moreover, it did not establish a watershed rule of procedure . . . . Therefore, under [Teague] and its progeny, Booker has no retroactive application." United States v. Hall, No. 04-1636, Memorandum Opinion, at 5 (internal citations omitted). This Court agrees that Booker should not be applied retroactively to cases on collateral review. Therefore, even if Mr. Agramonte had raised a Booker claim in his Section 2255 motion, the claim could not be pursued in this forum. For the reasons set forth in this Opinion, it is hereby

ORDERED that defendant's motion for relief under 28 U.S.C. § 2255 is DENIED.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: April 28, 2005